**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

WILLIAM SEMMENS,                   :
                                   :   Civil Action No. 09-5985 (JLL)
              Petitioner,          :
                                   :
         v.                        :   **OPINION**
                                   :
LARRY GLOVER, et al.,              :
                                   :
              Respondents.         :

**APPEARANCES:**

Petitioner pro se                    Counsel for Respondents
William Semmens                      Patricia B. Quelch
719 7th Street                       Asst. Prosecutor
Union Beach, NJ 07735                Monmouth County
                                     Court House
                                     71 Monument Street
                                     Freehold, NJ 07728

**LINARES**, District Judge

     Petitioner William Semmens, a prisoner confined at Northern

State Prison in Newark, New Jersey, at the time he filed this

Petition, has submitted a petition for a writ of habeas corpus

pursuant to 28 U.S.C. § 2254.  The respondents are Larry Glover

and the Attorney General of New Jersey.

     For the reasons stated herein, the Petition must be

dismissed.

I.   BACKGROUND

A.   Factual Background

The relevant facts are set forth in the opinion of the
Superior Court of New Jersey, Appellate Division.[1]

> The charges against defendant arose out of
> allegations by his daughter, P.S., that he sexually
> abused and assaulted her between September 1991 and
> December 1992 when she was six years old.  The abuse
> was not reported, however, until 1997, when the child
> saw a video in school and realized that her father's
> conduct when she was younger was wrong.
>
> The child reported the incidents in March 1997,
> after which defendant was advised of his Miranda [fn]
> rights before he was interviewed by Sergeant Peter
> Weinrich.  He waived his Miranda rights a second time
> before giving a sworn statement.  Defendant admitted
> sexual contact with the child three or four times.  He
> claimed, however, that the contacts were accidents.
>
> > [fn] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct.
> > 1602, 16 L.Ed.2d 694 (1966).
>
> When defendant gave his sworn statement to the
> police, he refused to sign it, although he agreed that
> it accurately reflected the questions he was asked and
> the answers he gave.  Defendant never denied the truth
> of his statement.
>
> After defendant's conviction, P.S. made
> allegations of sexual abuse against two other men.  In
> December 2001, P.S. reported that her mother's
> boyfriend, D.G., sexually assaulted her over a period
> of three years from March 1997 to June 2000.  D.G. was
> charged with aggravated sexual assault upon a juvenile

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding
instituted by an application for a writ of habeas corpus by a
person in custody pursuant to the judgment of a State court, a
determination of a factual issue made by a State court shall be
presumed to be correct.  The applicant shall have the burden of
rebutting the presumption of correctness by clear and convincing
evidence."

of whom he was a guardian, N.J.S.A. 2C:14-2; and
endangering the welfare of a child over whom he was a
guardian, N.J.S.A. 2C:24-4.  When the matter was
presented to the Grand Jury, it returned no bill of
indictment.

     In August 2002, P.S. reported that R.S., a
juvenile with whom she worked at a deli, sexually
assaulted her at work.  Because R.S. was a juvenile,
there is no available information as to the outcome of
the matter.

(Answer, Ex. 51, Opinion of Appellate Division at 2-4 (Jan. 21,
2009)).

## B.   Procedural History

     Following a jury trial in the Superior Court of New Jersey,
Trial Division, Monmouth County, Petitioner was convicted of
first-degree aggravated sexual assault in violation of
N.J.Stat.Ann. § 2C:14-21(1), second-degree sexual assault, in
violation of N.J.Stat.Ann. § 2C:14-2b, and second-degree
endangering the welfare of a child, in violation of N.J.Stat.Ann.
§ 2C:24-4a.  On February 25, 2000, Petitioner was sentenced to a
term of twenty years' incarceration.

3

On direct appeal,[2] the Superior Court of New Jersey, Appellate Division, ordered a limited remand for the trial court to rule on Petitioner's claims of ineffective assistance of trial counsel. After that hearing was completed, the trial court found that trial counsel was not ineffective and, on January 3, 2002, the Appellate Division affirmed Petitioner's conviction and sentence. The Supreme Court of New Jersey denied certification on May 22, 2002.[3] <u>State v. W.G.S.</u>, 172 N.J. 359 (2002).

Petitioner filed his state petition for post-conviction relief ("PCR") on September 28, 2004.[4] He was assigned counsel, who filed an amended petition and brief in support of

_____

[2] <u>Inter alia</u>, Petitioner raised on direct appeal the following claims: that he did not give a confession as indicated by the police; that the prosecutor improperly withheld from the grand jury exculpatory evidence in the form of a medical report and certain notes between the victim and her mother; that the petit jury should not have been permitted to see his unredacted confession, which contained information about other alleged crimes and/or "bad acts"; the trial court denied him due process when it denied his request for an independent physical and psychological examination of the minor victim; trial counsel failed to provide effective assistance; the prosecutor's remarks during summation were improper; the sentence was excessive.

[3] In his petition for certification, Petitioner raised only the claim of ineffective assistance of trial counsel. (Answer, Ex. 41). Thus, all other claims raised on direct appeal were abandoned and unexhausted.

[4] Petitioner primarily based his claims for post-conviction relief on allegations that the minor victim had, since trial, falsely accused two other individuals of sexually molesting her. Thus, Petitioner contended that this "newly-discovered" evidence entitled him to a new independent psychological examination of the victim and to a new trial. He also, again, asserted ineffective assistance of trial counsel. (Answer, Exs. 43, 44).

Petitioner's PCR petition.  On January 19, 2007, the trial court denied relief.  On January 21, 2009, the Appellate Division affirmed the denial of relief.  The Supreme Court of New Jersey denied certification on September 11, 2009.  State v. W.S., 200 N.J. 370 (2009).  This Petition followed.

Here, Petitioner asserts the following grounds for relief: (1) ineffective assistance of trial counsel, (2) Petitioner's prior "bad acts" were provided to the jury through submission of his unredacted confession,[5] (3) the trial court should have granted Petitioner's motion to compel an independent medical and psychological examination of the minor victim, (4) Petitioner's sentence was excessive, (5) the prosecutor's remarks during summation were improper, (6) the confession should have been suppressed, (7) the prosecutor failed to provide exculpatory evidence to the grand jury, (8) ineffective assistance of PCR counsel,[6] (9) Petitioner was entitled to a new trial based on "newly-discovered" evidence, (10) Petitioner was entitled to a

---

[5] This allegation is not supported by the facts.  The confession provided to the jury was, in fact, redacted and limited to the crimes for which Petitioner had been indicted. (Resp'ts' Answer, Ex. 26, State's Br. on Direct Appeal, at 21, 27-28, and Pa3 to 9; Tr. of 4/21/1999 at 29-30, 38-39, 110). Thus, Petitioner is not entitled to relief on this claim, regardless of the law governing admission of prior bad acts or other crimes.

[6] Ineffective assistance of counsel during state post-conviction proceedings is not a ground for federal habeas corpus relief; Petitioner is not entitled to relief on this claim.  See 28 U.S.C. § 2254(i).

new independent psychological examination of the victim based on
"newly-discovered" evidence,[7] and (11) improper jury
instructions, leading to violation of his right to be free from
double jeopardy for the same crime.

In their Answer, Respondents assert that Petitioner failed
to exhaust his state remedies with respect to certain claims, and

---

[7] Errors in state post-conviction relief proceedings
(grounds nine and ten) are collateral to the conviction and
sentence and do not give rise to a claim for federal habeas
relief.  See, e.g., Hassine v. Zimmerman, 160 F.3d 941, 954 (3d
Cir. 1998), cert. denied, 526 U.S. 1065 (1999) ("[T]he federal
role in reviewing an application for habeas corpus is limited to
evaluating what occurred in the state or federal proceedings that
actually led to the petitioner's conviction; what occurred in the
petitioner's collateral proceeding does not enter into the habeas
calculation ... Federal habeas power is 'limited ... to a
determination of whether there has been an improper detention by
virtue of the state court judgment.'"); Ferguson v. State, 1996
WL 1056727 (D.Del. 1996) and cases cited therein.

Moreover, the Supreme Court has made it clear that the right
to due process of law does not require a state court to consider
newly discovered evidence proffered after trial if the trial
itself was constitutionally adequate.  Herrera v. Collins, 506
U.S. 390, 400 (1992) ("Claims of actual innocence based on newly
discovered evidence have never been held to state a ground for
federal habeas relief absent an independent constitutional
violation occurring in the underlying state criminal
proceeding.").  Concurring in Herrera, Justices Scalia and Thomas
emphasized their belief that "[t]here is no basis in text,
tradition, or even in contemporary practice ... for finding ... a
[constitutional] right to demand judicial consideration of newly
discovered evidence of innocence brought forward after
conviction."  506 U.S. at 427-28.  Even assuming, for the sake of
argument, a right to new trial based upon "a truly persuasive
demonstration of 'actual innocence,'" 506 U.S. at 417,
Petitioner's argument falls far short of the threshold.  He
presents evidence only of subsequent allegations, by the victim,
of sexual misconduct towards her by two other men; he fails,
however, to present any evidence that such allegations were
false.

that the Petition should, therefore, be denied.  This matter has been fully briefed and is now ready for decision.

## II.  28 U.S.C. § 2254

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254 now provides, in pertinent part:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

With respect to any claim adjudicated on the merits in state court proceedings, the writ shall not issue unless the adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless

7

arrives at a result different from [the Court's] precedent."
Williams v. Taylor, 529 U.S. 362, 405-06 (2000) (O'Connor, J.,
for the Court, Part II).  A state court decision "involve[s] an
unreasonable application" of federal law "if the state court
identifies the correct governing legal rule from [the Supreme]
Court's cases but unreasonably applies it to the facts of the
particular state prisoner's case." Id. at 407, 409.[8] To be an
"unreasonable application" of clearly established federal law,
the state court's application must be objectively unreasonable.
Id. at 409.  In determining whether the state court's application
of Supreme Court precedent was objectively unreasonable, a habeas
court may consider the decisions of inferior federal courts.
Matteo v. Superintendent, 171 F.3d 877, 890 (3d Cir. 1999).

Even a summary adjudication by the state court on the merits
of a claim is entitled to § 2254(d) deference.  Chadwick v.
Janecka, 302 F.3d 107, 116 (3d Cir. 2002) (citing Weeks v.
Angelone, 528 U.S. 225, 237 (2000)).  With respect to claims
presented to, but unadjudicated by, the state courts, however, a
federal court may exercise pre-AEDPA independent judgment.  See
Hameen v. State of Delaware, 212 F.3d 226, 248 (3d Cir. 2000),
cert. denied, 532 U.S. 924 (2001). In such instances, "the

---

[8] Unreasonable application may also involve an "unreasonable
application" of federal law "if the state court either unreasonably extends a
legal principle from [the Supreme Court's] precedent to a new context where it
should not apply or unreasonably refuses to extend that principle to a new
context where it should apply."  However, the Supreme Court expressly declined
to decide the issue as it was not before the Court.  Id. at 407-09.

federal habeas court must conduct a de novo review over pure legal questions and mixed questions of law and fact, as a court would have done prior to the enactment of AEDPA." Appel v. Horn, 250 F.3d 203, 210 (3d Cir. 2001) (citing McCandless v. Vaughn, 172 F.3d 255, 260 (3d Cir. 1999)). "However, § 2254(e)(1) still mandates that the state court's factual determinations are presumed correct unless rebutted by clear and convincing evidence." Simmons v. Beard, 590 F.3d 223, 231 (3d Cir. 2009).

The deference required by § 2254(d) applies without regard to whether the state court cites to Supreme Court or other federal caselaw, "as long as the reasoning of the state court does not contradict relevant Supreme Court precedent." Priester v. Vaughn, 382 F.3d 394, 398 (3d Cir. 2004) (citing Early v. Packer, 537 U.S. 3 (2002); Woodford v. Visciotti, 537 U.S. 19 (2002)).

Although a petition for writ of habeas corpus may not be granted if the Petitioner has failed to exhaust his remedies in state court, a petition may be denied on the merits notwithstanding the petitioner's failure to exhaust his state court remedies. See 28 U.S.C. § 2254(b)(2); Lambert v. Blackwell, 387 F.3d 210, 260 n.42 (3d Cir. 2004); Lewis v. Pinchak, 348 F.3d 355, 357 (3d Cir. 2003).

Finally, a pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. Estelle

9

v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 722 (3d Cir. 1989).

## III. ANALYSIS

### A. Exhaustion of State Remedies

In their Answer, Respondents assert that Petitioner has failed to exhaust his state remedies with respect to the following grounds: two (Petitioner's unredacted statement, containing information about other bad acts or other crimes, was presented to the petit jury - raised on direct appeal), three (the trial court's denial of Petitioner's motion for independent medical and psychological examinations of the victim, was erroneous - raised on direct appeal), nine (Petitioner was entitled to a new trial based on newly-discovered evidence - raised on post-conviction relief), ten (based on newly-discovered evidence, Petitioner was entitled to an independent psychological examination of the victim - raised on post-conviction relief), and eleven (allegation of improper jury instructions, including allegation of failure to instruct regarding lesser included offenses, leading to exposure to double jeopardy and insufficient evidence to sustain conviction - raised in motion for bail after conviction).

This Court is in agreement that certain of Petitioner's claims are not exhausted and that, therefore, the Petition must be dismissed.

A state prisoner applying for a writ of habeas corpus in federal court must first "[exhaust] the remedies available in the courts of the State," unless "there is an absence of available State corrective process[] or ... circumstances exist that render such process ineffective ...." 28 U.S.C. § 2254(b)(1). See Rose v. Lundy, 455 U.S. 509, 515 (1982); Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997), cert. denied, 532 U.S. 919 (2001) (finding that "Supreme Court precedent and the AEDPA mandate that prior to determining the merits of [a] petition, [a court] must consider whether [petitioner] is required to present [his or her] unexhausted claims to the [state's] courts").

A petitioner exhausts state remedies by presenting his federal constitutional claims to each level of the state courts empowered to hear those claims, either on direct appeal or in collateral post-conviction proceedings. See, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 847 (1999) ("requiring state prisoners [in order to fully exhaust their claims] to file petitions for discretionary review when that review is part of the ordinary appellate review procedure in the State"); Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997) (collateral attack in state court is not required if the petitioner's claim has been

11

considered on direct appeal); see also 28 U.S.C. § 2254(c)("An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented"). Once a petitioner's federal claims have been fairly presented to the state's highest court, the exhaustion requirement is satisfied. Castille v. Peoples, 489 U.S. 346, 351 (1989)(citing Picard v. Connor, 404 U.S. 270, 275 (1971)).

The petitioner generally bears the burden to prove all facts establishing exhaustion. Toulson v. Beyer, 987 F.2d 984, 987 (3d Cir. 1993). This means that the claims heard by the state courts must be the "substantial equivalent" of the claims asserted in the federal habeas petition. Picard, 404 U.S. at 276, 278. Reliance on the same constitutional provision is not sufficient; the legal theory and factual basis must also be the same. Id. at 277.

Failure to exhaust may be excused on the basis that state process is unavailable, but "state law must clearly foreclose state court review of unexhausted claims." Toulson, 987 F.2d at 987. In addition, the Court of Appeals for the Third Circuit has stated that, "if a prisoner could establish that the activities of the state authorities made the prisoner's resort to the state procedures in effect unavailable, exhaustion would be excused."

12

Mayberry v. Petsock, 821 F.2d 179, 184 (3d Cir. 1987), cert. denied, 484 U.S. 946 (1987). However, discovery and an evidentiary hearing should not be made available to a habeas petitioner who claims relief from the exhaustion rule "unless the petitioner sets forth facts with sufficient specificity that the district court may be able, by examination of the allegations and the response, if any, to determine if further proceedings are appropriate." Id. at 186. "[T]he allegations of exhaustion must be at least as specific with respect to the facts allegedly excusing exhaustion as is required for allegations alleging constitutional deprivation as the basis for the habeas petition." Id. at 187.

Alternatively, "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2).

Generally, district courts should dismiss petitions containing unexhausted claims in the absence of a state court decision clearly precluding further relief, even if it is not likely that a state court will consider the claims on the merits. Rose v. Lundy, 455 U.S. at 522; Banks v. Horn, 126 F.3d 206, 212-14 (3d Cir. 1997); see also Toulson, 987 F.2d at 989 ("Because no [New Jersey] court has concluded that petitioner is procedurally barred from raising his unexhausted claims and state law does not

clearly require a finding of default, we hold that the district court should have dismissed the petition without prejudice for failure to exhaust state remedies"). But see Christy v. Horn, 115 F.3d 201, 206-07 (3d Cir. 1997) ("in rare cases exceptional circumstances of peculiar urgency may exist which permit a federal court to entertain an unexhausted claim").

More recently, because the one-year statute of limitations enacted by AEDPA in 1996 is not statutorily tolled by the premature filing of a federal habeas petition, see Duncan v. Walker, 533 U.S. 167 (2001), federal courts sometimes may stay § 2254 habeas proceedings to permit prisoners to exhaust state claims. Petitioner has not requested such a stay.

The exhaustion requirement is a "total exhaustion" rule; that is, all claims presented in the federal habeas petition must have been exhausted in state court. Rose v. Lundy, 455 U.S. 509 (1982). At the time Lundy was decided, there was no statute of limitations on the filing of federal habeas petitions. The enactment in 1996 of a one-year limitations period for § 2254 habeas petitions,[9] however, "'has altered the context in which the choice of mechanisms for handling mixed petitions is to be made.'" Crews v. Horn, 360 F.3d 146, 151 (3d Cir. 2004) (quoting Zarvela v. Artuz, 254 F.3d 374, 379 (2d Cir. 2001), cert. denied, 534 U.S. 1015 (2001)). Because of the one-year limitations

---

[9] See 28 U.S.C. § 2244(d).

14

period, dismissal of a timely-filed mixed petition may forever

bar a petitioner from returning to federal court.  "Staying a

habeas petition pending exhaustion of state remedies is a

permissible and effective way to avoid barring from federal court

a petitioner who timely files a mixed petition."  Crews, 360 F.3d

at 151.  Indeed, the Court of Appeals for the Third Circuit has

held that "when an outright dismissal could jeopardize the

timeliness of a collateral attack, a stay is the only appropriate

course of action."  Crews, 360 F.3d at 154.

       The Supreme Court has somewhat limited the stay-and-abeyance

rule announced in Crews.

> [S]tay and abeyance should be available only in limited
> circumstances.  Because granting a stay effectively
> excuses a petitioner's failure to present his claims
> first to the state courts, stay and abeyance is only
> appropriate when the district court determines there
> was good cause for the petitioner's failure to exhaust
> his claims first in state court.  Moreover, even if a
> petitioner had good cause for that failure, the
> district court would abuse its discretion if it were to
> grant him a stay when his unexhausted claims are
> plainly meritless.
>
> ...
>
>       On the other hand, it likely would be an abuse of
> discretion for a district court to deny a stay and to
> dismiss a mixed petition if the petitioner had good
> cause for his failure to exhaust, his unexhausted
> claims are potentially meritorious, and there is no
> indication that the petitioner engaged in intentionally
> dilatory litigation tactics.  In such circumstances,
> the district court should stay, rather than dismiss,
> the mixed petition.  ...  For the same reason, if a
> petitioner presents a district court with a mixed
> petition and the court determines that stay and
> abeyance is inappropriate, the court should allow the

15

> petitioner to delete the unexhausted claims and to
> proceed with the exhausted claims if dismissal of the
> entire petition would unreasonably impair the
> petitioner's right to obtain federal relief.

Rhines v. Weber, 544 U.S. 269, 277-78 (2005) (citations omitted).

Even where stay and abeyance is appropriate, the district court's discretion in structuring the stay is limited by the timeliness concerns reflected in the one-year statute of limitations. "Thus, district courts should place reasonable time limits on a petitioner's trip to state court and back." Id. at 278. See also Crews, 360 F.3d at 154 ("If a habeas petition is stayed, the petitioner should be given a reasonable interval, normally 30 days, to file his application for state post-conviction relief, and another reasonable interval after the denial of that relief to return to federal court. If a petitioner fails to meet either time-limit, the stay should be vacated nunc pro tunc.") (citations omitted).

Here, Petitioner plainly has failed to exhaust several of his claims. In the first instance, the parties agree that Petitioner raised his claim regarding inadequate jury instructions (ground eleven), which allegedly led to a double jeopardy violation or conviction based on insufficient evidence, in a post-conviction motion for bail.[10]  He also raised, before the Appellate Division on direct appeal, the claims that his

_____

[10] Neither party has presented the Court with a copy of that motion.

16

prior bad acts were presented to the jury with his statement to police and that the trial court erred in denying his pre-trial request for independent medical and psychological examinations of the victim (grounds two and three). None of these claims, however, was presented to the Supreme Court of New Jersey in his petition for certification, which raised only the claim of ineffective assistance of trial counsel.

> Defendant claims counsel's representation was deficient on several grounds. Trial counsel's limited availability to defendant prior to and during the course of trial, his inadequate investigation, his failure to appear at critical stages of the proceedings, his failure to request a Sands hearing, his failure to discuss defendant testifying at the Miranda hearing or during trial, his impaired representation of defendant, and defendant's lack of confidence in counsel. The cumulative effect of counsel's deficient pretrial performance resulted in prejudice against the defendant. This prejudice to defendant was not cured by an otherwise "fair trial."

(Answer, Ex. 41, Defendant's Brief in Support of Petition for Certification, page 8.)

Thus, Petitioner has presented this Court with a "mixed" petition,[11] but has not requested a stay. Nor has he presented any facts or argument suggesting that there is good cause for his failure to exhaust his state remedies. Petitioner was

---

[11] Indeed, Petitioner also failed to exhaust the claims asserted as grounds four (excessive sentence), five (prosecutorial misconduct in closing remarks), six (Petitioner did not give a confession as indicated by the police), and seven (prosecutorial misconduct in grand jury proceedings). (Answer, Exs. 41, 53, Defendant's Briefs in support of his Petitions for Certification on direct appeal and post-conviction relief.)

represented by counsel in his petition for certification to the
Supreme Court of New Jersey in his direct appeal and he does not
allege any deficiencies by counsel with respect to that
proceeding. Although Petitioner asserts that his post-conviction
relief counsel was ineffective, he bases that claim solely on the
fact that post-conviction relief counsel was unsuccessful. He
does not allege that counsel refused or failed to present any
arguments that Petitioner wished to present. Clearly, these
claims were known to Petitioner in time to properly exhaust them,
as he presented them to the lower state courts. Accordingly,
there is no reason to stay this matter to permit Petitioner to
exhaust his unexhausted claims. Thus, the Petition may be
dismissed as a "mixed" petition.

Nor is there any reason to ask Petitioner if he would like
to withdraw his unexhausted claims and proceed with the exhausted
claims, as the sole exhausted claim that asserts a ground for
federal habeas relief, the claim of ineffective assistance of
trial counsel, is plainly meritless, as set forth below.

B.     Ineffective Assistance of Trial Counsel

Petitioner alleges that he did not receive effective
assistance of trial counsel. In support of this claim, he
asserts that his trial counsel failed to appear to argue the
motion for an independent medical and psychological examination
of the victim, that his trial had to be re-scheduled twice due to

18

his counsel's failure to appear, that his counsel failed to confer with him prior to trial, that his counsel failed to call appropriate defense witnesses, that his counsel failed to move for a judgment of acquittal as to any counts at the conclusion of trial, that his counsel failed to request a hearing under New Jersey Evidence Rule 404(b) regarding the admissibility of prior crimes evidence contained within Petitioner's confession, and that his counsel failed to request limiting instructions regarding the prior crimes evidence.  Petitioner alleges that, at the time of trial, his counsel was distracted because he was involved in his own divorce proceeding and in defending himself against an unrelated ethics complaint.

During Petitioner's direct appeal, the Appellate Division remanded the claim of ineffective assistance of trial counsel. Following a lengthy evidentiary hearing, the trial court found that counsel had not been ineffective.

> Claims of ineffective assistance of counsel, under the Sixth Amendment to the U.S. Constitution, are evaluated under a two-prong test set forth by the U.S. Supreme Court in STRICKLAND versus WASHINGTON, 466 U.S. 668, 104 Supreme Court Reporter at 2054.  ...
>
> The two-prong test requires first, the defendant must show that counsel's performance was deficient. This requires a showing that counsel made errors so serious that counsel was not functioning as "counsel" guaranteed the defendant by the Sixth Amendment.
>
> And second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious

as to deprive the defendant of a fair trial.  A trial whose result would be reliable.

Unless the defendant can make both showings, it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the results unreliable.

. . .

The following findings of fact are now made in furtherance of the appeal and the issue of ineffective assistance of counsel.  The original strategy of both the defendant and counsel, aside from an absolute denial by the defendant, was that the victim's mother, Angel Crommie (phonetic), instilled in the victim's mind that defendant had acted inappropriately towards her.  Angel Crommie's motives and credibility, in general, were the precise issue that counsel chose to pursue at trial.

Ms. Crommie had a psychiatric history which was brought out during cross examination.  Ms. Crommie had made other allegations against another male, using the same victim.  This was clearly brought out on cross examination.  There were no physical signs of sexual contact, this was clearly set forth, if not in direct, on cross of the physician, Dr. Noreena Carnivale (phonetic).

So that right up front, counsel knew defendant demanded a trial, as was his right.  Right up front, counsel knew that defendant denied inappropriate conduct.  And right up front, counsel knew of the potential bias and/or illegitimate motive of the victim's mom, Angel Crommie.  The defense of this case was formed in a two or two and a half hour initial meeting with the defendant.  And the tactics of the defense never changed.

Counsel, W. Randolph Kraft, met with or spoke to defendant's prior counsel, retained for purposes of bail.  He filed a formal substitution of attorney.  After receipt of a retainer, he filed a motion within days requesting an examination of the victim.  He appeared and argued that motion.  However, with an adverse decision.  The credible evidence suggests multiple meetings with the defendant, regarding trial

tactics, discovery, witness lists, testimony by the
defendant, Miranda issues, and fresh complaint issues.

Counsel appeared at a plea cutoff process before
Judge Labrecque, preserving pretrial issues such as
Miranda hearing and fresh complaint hearings.  Counsel
provided reciprocal discovery (See S-7).  There was
credible evidence to show that the attorney either
interviewed witnesses or spoke with them on the phone,
including the victim's treating physician.  He
conducted pretiral hearings immediately prior to trial,
in that a Miranda hearing was held.  Findings were
recorded by this Court.

As well as a hearing with respect to the
admissibility of fresh complaint testimony.  Findings
were made by this Court immediately prior to trial.
Again, to repeat, the trial strategy to impeach the
credibility of the victim's mother, appears to have
never changed.  The cross examination of Angel Crommie
brought before the jury the potential motive to
influence the child victim to lie about her father and
his conduct.

Her bad character and reputation for truthfulness
was squarely addressed by counsel in his cross
examination.  The prior false statements against
another male regarding inappropriate sexual conduct
against this same victim were admitted at trial.  For
example, S-16 was used during cross examination of
Angel Crommie.  The status of her psychological
treatment, as it would affect her recollection of
events, was explored.  That's my recollection, and
that's from my review of my trial notes.

Cross examination of Dr. Noreena Carnivale
established that no physical signs of penetration were
evident.

It appears that counsel negotiated, over the
course of pendency of the complaint, a 20 to life offer
to an eight flat offer, which appears in the plea
cutoff form.  Counsel was not, however, able to
persuade the prosecutor to allow a plea to a nonsexual
offense.

There appears credible evidence to show active
plea negotiations.  The credible and most logical

21

evidence before me, revealed a mutual decision by attorney and client, not to testify at either the Miranda hearing or at trial. In the face of some significantly detrimental evidence, which was available to the State, depending on the scope of defendant's direct examination, there was rebuttal testimony available.

And again, depending on the scope of defendant's direct, the availability of very devastating rebuttal testimony certainly could have justified a mutual decision not to testify. I should also mention that counsel filed a motion to compel the production of Angel Crommie at trial, and successfully obtained such an order, signed by Judge Hull. No written statements were taken by counsel of any of the 18 witnesses submitted by the defendant to his attorney.

And although I don't have the benefit of a transcript of the hearing, I was satisfied at the time that many of the witnesses were reluctant to testify, had no helpful information, or in the case of Angel Crommie's sister, perhaps had damaging information which caused her to leave the jurisdiction rather than testify.

Defendant's testimony that he only met the attorney one time, does not appear to be credible. Defendant's testimony that there were no consultations during trial, also appears not to be credible.

During the cross examination of Mr. Semmens, it was clear that he had more understanding of his case than he chose to admit during direct. He was present during the motions. He communicated with Mr. Kraft regarding the list of witnesses. There were phone conversations regarding the case, defendant describes them as "every once in awhile."

The witnesses were subpoenaed by counsel. Some of the subpoenaed witnesses even called the defendant to complain about the server, over which counsel really had no control. Copies of the subpoenas were provided by counsel to the defendant.

There were some initial instructions, or some initial discussions between counsel and the defendant with respect to obtaining a physical exam of the

22

victim. A motion was dutifully filed shortly
thereafter. Evidently, there was also some discussion
with counsel regarding his prior juvenile record.
There was also some discussion between defendant and
counsel, with respect to admissibility of his prior
criminal record if he took the stand.

On advice of counsel, defendant chose not to take
the stand, either at the Miranda hearing or at trial.
He claims he didn't have a choice, he had to listen to
his attorney. But frankly, the advice of counsel
appears to be soundly based. Both because of the
availability of damaging potential rebuttal testimony,
and also the fact of a potentially admissible prior
criminal record.

To the best of my ability to ascertain credibility
issues, it would appear that defendant's decision not
to testify was an informed one. He may have initially
wanted to testify, but he accepted his attorney's
advice for the reasons now I've stated several times.
It appears that defendant actively participated in
trial decisions.

Defendant's testimony that he felt pressure to
keep Mr. Kraft as his attorney, after he spoke to Judge
Labrecque, does not appear to be credible. It appears
as if he chose to have Mr. Kraft continue as his
attorney, despite complaints aired to Judge Labrecque.

Mr. Kraft's testimony that he recommended that an
investigator be hired, and that defendant refused for
financial reasons, to do so, appears to be a credible
rendition, logically acceptable as the true version of
what happened.

Mr. Kraft's personal and professional problems
during or coincident with the trial, were stipulated,
and included but are not limited to some five or six
separate ethics complaints, a personal matrimonial
litigation, and emotional problems and issues, as
outlined in D-3 and D-4.

The attorney's testimony that he and defendant
were on the same line and there were no breaks in
communications, appears to be a gross exaggeration.
But so too do defendant's assertions that he saw his

23

attorney only once and had no meaningful communications with respect to defense tactics.

I don't know what further communications could have accomplished. This attorney knew very early on that defendant's position was he was not guilty. And that the only viable tactic was to attack the credibility and motive of Angel Crommie, which was done at trial, by the way.

The attorney evidently reviewed pretrial strategy documents, including but not limited to apparently relevant reports marked later in the hearing as S-17, S-18, S-19, S-20, S-21, whether they were received in discovery or from the defendant or otherwise.

The attorney was present when the verdict was taken, and a subsequent bail application was heard after conviction. There may have been gaps in defendant's ability to communicate with his lawyer, due to the lawyer's personal problems. But I don't know what could have been accomplished, that wasn't already established very early on in the representation. I didn't do it, it never happened, Angel Crommie influenced the victim inappropriately with an inappropriate and real motive to lie. And I didn't do it. Here are some witnesses that can help.

The witnesses were interviewed, either by phone or in person. And the bottom line is, many could not help and many would not help. A tactical decision was made not to call any witnesses. I don't have the transcript available, but at the time of the hearing I was satisfied that the attorney logically excluded some of the named witnesses. And concluded that they wouldn't help and they may hurt the defense case.

I should also note at this juncture that the lawyer subpoenaed Angel Crommie's medical records. See S-4. And evidently, that mental status information did not come from the defendant, but was independently subpoenaed by the lawyer. I believe defendant admits that his lawyer had a pretty good idea what Angel Crommie was like, fairly early in his professional employment in 1997. There was discussion about DYFS records. The attorney sent out subpoenas for the DYFS records.

24

As the trial judge, my feel for the case at the time, was that in fact the motivation and credibility of Angel Crommie was fully explored at trial.  The issues were before the jury.

And my impression was then, and still is now, that the jury believed ... the victim.  With that said, despite Angel's motives, which were explored, they believed the victim.  A pure credibility call by a jury, who, in my opinion had the full picture.

Based upon my review of the evidence, under closer scrutiny, counsel made reasonable investigations.  He made, in my opinion, reasonable decisions with respect to his client's testimony.  And I should put on the records that, evidently the State had information from other young females with respect to perhaps inappropriate sexual conduct, which could only come out on rebuttal.  And again, depending on the scope of defendant's testimony.

I'm not saying that they were admissible automatically.  But certainly it was a consideration for counsel in his determination not to have his client testify.  It appears that there were more informed tactical defense decisions than not.  ... [T]he attorney's failure to have a stable office, the attorney's failure to meet his client in office settings, his inability to reconstruct his file now, do not appear to have had any major impact on his trial performance.  There were gaps in communication.  But again, I minimize that as an important factor, because the trial tactics of the defense were case very early on.  What would have changed by additional meetings, when all knew what the defense strategy would be?

... I can't find, based upon my feel for the case, and based upon the evidence that I heard, that counsel's failure was materially deficient.  I felt, as the trial judge, the defendant got a fair trial.

And frankly, I can't find that there is reasonable probability that, but for counsel's conduct, the proceedings would have been different, or the result different.  Very simply put, the jury believed ... the young female victim.

> For the reasons stated, I don't find ineffective assistance of counsel. And if there were tactical errors during trial by counsel, I can't see how the decision would have been different, given the pure credibility call the jury made ... .
>
> I haven't even touched upon the fact that there were inculpatory statements made by the defendant. The Miranda hearing was held. I held it to be admissible. That was before the jury. Vague allegations regarding the motivation of the police officer, were certainly not corroborated, nor did I perceive any improper motives at all. This police officer was doing his job, he took a statement, we had a hearing on it. I ruled it admissible under Miranda.

(Answer, Ex. 15, Tr. of August 27, 2001, at 2-3, 9-20.)

The Appellate Division affirmed, the panel stating that they were "in substantial agreement" with the lower court's analysis. (Answer, Ex. 40, Opinion of Appellate Division at 3-4 (Jan. 3, 2002).)

The Counsel Clause of the Sixth Amendment provides that a criminal defendant "shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The right to counsel is "the right to <u>effective</u> assistance of counsel." <u>McMann v. Richardson</u>, 397 U.S. 759, 771 n.14 (1970) (emphasis added).

To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must show both that his counsel's performance fell below an objective standard of reasonable professional assistance and that there is a reasonable probability that, but for counsel's unprofessional errors, the outcome would have been

different.  Strickland v. Washington, 466 U.S. 668, 688, 694
(1984).  A "reasonable probability" is "a probability sufficient
to undermine confidence in the outcome."  Strickland at 694.
Counsel's errors must have been "so serious as to deprive the
defendant of a fair trial, a trial whose result is reliable."
Id. at 687.  "When a defendant challenges a conviction, the
question is whether there is a reasonable probability that,
absent the errors, the factfinder would have had a reasonable
doubt respecting guilt."  Id. at 695.

The performance and prejudice prongs of Strickland may be
addressed in either order, and "[i]f it is easier to dispose of
an ineffectiveness claim on the ground of lack of sufficient
prejudice ... that course should be followed."  Id. at 697.

There is "a strong presumption that counsel's conduct falls
within the wide range of reasonable professional assistance."
Strickland, 466 U.S. at 689.  As a general matter, strategic
choices made by counsel after a thorough investigation of the
facts and law are "virtually unchallengeable," though strategic
choices "made after less than complete investigation are
reasonable precisely to the extent that reasonable professional
judgments support the limitations on investigation."  Id. at 690-
91.  If counsel has been deficient in any way, however, the
habeas court must determine whether the cumulative effect of
counsel's errors prejudiced the defendant within the meaning of

27

Strickland.  See Berryman v. Morton, 100 F.3d 1089, 1101-02 (3d
Cir. 1996).

Here, the state courts' findings were based upon an
extensive evidentiary record and were based upon application of
the correct Strickland standard.  The state court decisions were
neither contrary to, nor involved an unreasonable application of,
clearly established federal law, nor were they based upon an
unreasonable determination of the facts in light of the evidence
presented.  Petitioner is not entitled to relief on this claim.

## IV.  CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).

"When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  Slack v. McDaniel, 529 U.S. 473, 484 (2000).

Here, jurists of reason would not find debatable this Court's ruling.  No certificate of appealability shall issue.

## V.  CONCLUSION

For the reasons set forth above, the Petition will be dismissed.  An appropriate order follows.

Jose L. Linares
United States District Judge

Dated:  12/28/11

30